UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| TOMMY BORDERS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00144-RLM-MJD |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

**Entry Denying Petition for a Writ of Habeas Corpus
and Denying a Certificate of Appealability**

Petitioner Tommy Borders is serving an aggregate 45-year sentence for his 2010 convictions in Clay County, Indiana, for two counts of possession of methamphetamine, one count of maintaining a common nuisance, and one count of possession of paraphernalia. He brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons explained in this Entry, Mr. Borders's petition for a writ of habeas corpus must be **denied** and the action dismissed with prejudice. In addition, the court finds that a certificate of appealability should not issue.

## I. Background

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007).

1

On post-conviction relief, the Indiana Court of Appeals summarized the relevant facts and procedural history as follows:

> In January 2009, Borders, Tabitha Golden, and her daughter lived in a residence in Clay County. Borders and Golden were unemployed and kept methamphetamine in a black vinyl bag.
>
> On January 5, 2009, Clay County Sheriff's Narcotics Detective Jerry Siddons went to Borders's residence around 4:00 p.m. regarding a separate investigation. While there, Detective Siddons detected the odor of burnt marijuana as well as odors consistent with the use of methamphetamine, and he ended his contact with Borders.
>
> Around 9:00 p.m., Cassandra "Susie" McDaniel, who had known Golden for years, went to Borders's residence. Trial Transcript at 735. McDaniel had previously babysat for Golden's child in return for methamphetamine, Borders and Golden had previously provided methamphetamine to her, and Golden and McDaniel used McDaniel's methamphetamine that day.
>
> The same day, Officer Jeremy Mace conducted a traffic stop of Borders's vehicle and requested the presence of Brazil City Police Officer Kenny Hill. Officer Mace requested that Officer Hill conduct a dog sniff around Borders's vehicle because he said that he saw Borders and his passenger digging around in the car. Officer Hill's dog gave a positive indication on the vehicle.
>
> Officer Hill detected a chemical smell around the car when he walked his dog around and then could smell the odor of burnt marijuana coming from Borders when he exited the vehicle.
>
> Detective Siddons and Deputy James Switzer also responded to the scene. While speaking with Borders, Detective Siddons smelled the odor of burnt marijuana. Deputy Switzer also detected the odor of burnt marijuana and a chemical odor he had previously detected in the presence of either the ingestion or manufacture of methamphetamine. The police conducted a search of Borders's vehicle and did not find any drugs but seized $2,930.
>
> At 1:45 a.m. on January 6, 2009, the police obtained a search warrant for Borders's residence, and the police executed the warrant at 2:19 a.m. They discovered Golden, her child, and McDaniel within the residence. The search of the house revealed scales and paraphernalia, including smoking pipes and rolling papers, a hand-

2

rolled marijuana cigarette, hypodermic needles, Q-tips, a metal spoon, and two bags of an off-white powder substance later determined to be methamphetamine, weighing 29.02 grams.

The State charged Borders with Count I, possession of methamphetamine as a class A felony; Count II, possession of methamphetamine as a class C felony; Count III, maintaining a common nuisance as a class D felony; Count IV, possession of marijuana as a class A misdemeanor; Count V, possession of paraphernalia as a class A misdemeanor; and Count VI, being an habitual substance offender.

In November 2009, the court held a jury trial, at which the State presented the testimony of Detective Siddons, Officer Hill, Officer Mace, Golden, and McDaniel.

> During closing argument, the prosecutor stated without objection:
>
>> I told you at the beginning in opening statement what a pox methamphetamine is on a community. You have seen victims of that pox here. You have seen Susie (phonetic) McDaniel. That was a woman who's 32 years of age. And you folks can see what – have seen with your own eyes what 15 years of methamphetamine use did to her. You've seen Tabitha Golden. You've seen what methamphetamine use has done. She's lost her child, and of course, that child is another victim of methamphetamine. The families of the defendant, the families of these witnesses, they're victims, as is this community as a whole. You have citizen law enforcement officers in this community who are out there risking their lives to save the victims, save the community, and actually to help and save those who violate the laws.

*Id.* at 806-808.

The prosecutor stated that "there are certain defenses that could be filed by a defendant that would cause us to have to say it happened at a particular time." *Id.* at 816. Borders's trial counsel objected, and the trial court admonished the jury that statements of counsel were not evidence, that the statements are simply an argument to persuade them, and that they can judge the evidence and the laws presented to them. The court then stated: "And with that, I will overrule the objection." *Id.* at 817.

The prosecutor stated:

> The one thing we know is – about Susie McDaniel is this:
> We know that in the morning following her arrest, she
> gave a statement to Detective Siddons that was
> videotaped. And you heard testimony that a copy of that
> videotape was provided to the defense counsel. If she
> had given any information in that video statement that
> she contradicted in her testimony before you, you surely
> would have heard about it. There was no such evidence
> that she had given any prior inconsistent statement to
> the statement she testified to before you.
>
> Secondly, if there was any independent evidence that
> anything that she had said in that video statement given
> to the defendant's counsel was wrong or incorrect, that
> evidence should have been presented to you. So, in
> other words, is – was there anyone who contradicted
> what [McDaniel] testified to? They have her statement,
> they knew what she said, yet no evidence was presented
> to contradict what she had told Detective Siddons either
> on the night following the arrest or in regard to the
> testimony she presented here.

*Id.* at 833-835.

The prosecutor later stated:

> Finally, we presented evidence of motive. Why did we not
> introduce the money, hundred dollar bills? To show the
> defendant's motive for having this methamphetamine.
> His motive was to use it and sell it. The evidence of using
> it and having it to sell it is the money and the electronic
> scales that was used to measure it out. If he were just a
> user, he wouldn't need that in his little black bag. That's
> why we introduced evidence of his unemployment, and
> that's why we introduced Susie's testimony that she had
> seen it, the black bag of Tommy's, lots of times.

*Id.* at 837-838.

During defense counsel's closing argument, the prosecutor objected,
and the court again told the jury that statements of counsel were not
evidence, that they are simply arguments to attempt to persuade

them, that "you have observed the evidence by the testimony and the exhibits given, and you should consider on that evidence and not on the statements of counsel." *Id.* at 867. Defense counsel later stated: "Mr. Borders is not of the – he's not some scourge of your community. He's a fellow citizen. He's a part of your community." *Id.* at 871.

Following defense counsel's closing argument, the court again admonished the jury and stated:

> And before [the prosecutor] finishes his closing statement, ladies and gentlemen of the jury, I'm going to admonish you at this time that closing statements, there has – go ahead. In closing statements by counsel to this point, there may have been an inference made that the defendant was dealing methamphetamine. You will be given instructions as to the exact five charges that you are to consider and all the elements thereof. And I would admonish you and tell you that he is not charged with dealing methamphetamine and you should not consider any inference, if there has been any such inference made. And further, you are to judge this case based upon the evidence that's been presented. You may make any inferences therefrom for the charges that have been filed against the defendant.

*Id.* at 872-873.

During the prosecutor's rebuttal, he stated: "It's not fair to have methamphetamine in the community doing the things that it's doing to children and families affected." *Id.* at 876-877. Defense counsel objected, and the court overruled the objection.

The prosecutor later stated:

> [Golden] was in here not wanting to have to say the things she had to say, but she'd already testified before Judge Akers to these odd questions. She didn't want to, but that doesn't mean they're untruthful. And was there any evidence introduced by the defendant that those statements were untruthful? Not an iota. It wasn't just Detective Siddons that smelled it. It was Officer Hill at the traffic stop that smelled the meth and the marijuana. It was Clay County's drug recognition expert, Deputy Switzer, who smelled these drugs. And you know who was never mentioned by defense counsel? Onya (phonetic), the certified drug testing dog. Silence.

Did you hear counsel ever address whether there was methamphetamine at that residence? Silence. We know it's meth. We knew it was an ounce of meth. We know it's at his residence. Now, the question is, based on the inferences and evidence, did he know it was there? The inferences and evidence, two persons who testify, the smells. Did you ever hear of any syringes and paraphernalia in the house? Did you ever hear them mentioned? Silence. This is a tragic story. This isn't we're on a wild goose chase to persecute people. Our life experiences tell us what methamphetamine does and does to a community.

*Id.* at 879-881.

Following the closing arguments, the court instructed the jury that statements made by the attorneys were not evidence, that their verdict should be based on the law and the facts as they find them, that Borders was not required to present any evidence, and that no defendant may be compelled to testify.

Following the court's instructions and outside the presence of the jury, the court stated that during closing argument, defense counsel approached the court, and the court instructed her that it would reserve her right to make a motion prior to the jury beginning its deliberations. Borders's counsel then asked the court to declare a mistrial based on the prosecutor's statements in closing that the charges were appropriate because the prosecutor was duly elected, that methamphetamine has an impact in the community, and that law enforcement officers were risking their lives. The court denied the motion for a mistrial.

The jury found Borders guilty of Count I, possession of methamphetamine as a class A felony; Count II, possession of methamphetamine as a class C felony; Count III, maintaining a common nuisance as a class D felony; and Count V, possession of paraphernalia as a class A misdemeanor. The jury found Borders not guilty of Count IV, possession of marijuana as a class A misdemeanor.

The court then proceeded to the second phase of the trial addressing whether Borders was an habitual substance offender, and Borders waived his right to a jury trial on the second phase. The court found Borders to be an habitual substance offender.

The court sentenced him to an aggregate term of forty-five years of

imprisonment.

On appeal, Borders's appellate counsel argued that there was no probable cause to support the issuance of the search warrant, the trial court abused its discretion in admitting evidence seized during the traffic stop, and the trial court improperly sentenced Borders. *Borders v. State*, No. 11A05-1001-CR-203, slip op. at 2 (Ind. Ct. App. April 18, 2011), *trans. denied*. We affirmed. *Id.*

With respect to the search warrant, we observed that the statement of an unidentified informer describing the means by which Borders acquired the methamphetamine and the assumptions of a police detective regarding Borders's dealing methamphetamine were insufficient but that the officers' observations of strong marijuana odors and odors consistent with the manufacturing of methamphetamine coming from Borders's home were sufficient to support a finding of probable cause. *Id.* at 4. As to the traffic stop, the court held that the narcotics detection dog's alert on the exterior of Borders's vehicle to the presence of contraband supplied the probable cause necessary for further police investigation of the contents of Borders's vehicle. *Id.* at 8. Borders's appellate counsel filed a petition for rehearing and a petition for transfer, both of which were denied.

On October 13, 2011, Borders filed a pro se petition for post-conviction relief. On June 27, 2013, Borders filed an amended petition and alleged that he received ineffective assistance of appellate counsel and asserted that "[a]ppellate counsel failed to raise . . . the issue of improper argument by the prosecuting attorney. Specifically, the prosecution vouched for the credibility of the investigation and the state's witnesses." Appellant's Appendix at 30. On July 3, 2013, Borders, by counsel, filed a motion to amend his original petition filed on October 13, 2011, by substituting the petition filed on June 27, 2013. On July 9, 2013, the court granted Borders's motion to substitute the June 27, 2013 petition.

On January 29, 2014, an evidentiary hearing was held. During the hearing, Borders's appellate counsel testified, and when asked whether he considered raising any other issues on direct appeal, he stated:

> Yes, . . . prior to my appointment, I had . . . perfected probably . . . over a hundred and fifty (150) uh appellate briefs and probably a hundred (100), hundred and fifty (150) or more trial, uh trial cases on . . . I reviewed the . . . record of proceedings and, and I have uh, reviewing

my personal notes I have about, I believe almost fifty (50) pages that er [sic] in excess of fifty (50) pages of a handwritten notes regarding . . . the transcript. I have about five (5) pages of . . . hot, potential issues that I considered raising and . . . researched the merits of raising and . . . not raising and after, as part of my process and determining what issues to raise on the appeal, I narrowed those the issues as a strategy decisions [sic] down to the three (3) issues that I raised on appeal.

Post-Conviction Transcript at 8. After Borders's post-conviction counsel referred to the beginning of the prosecutor's closing argument and asked if he made any notation of it, appellate counsel stated:

I did, I was aware of . . . that issue in the final argument, in those those [sic] object . . . or those issues as I recall were not objected to by . . . trial counsel and I decided not to raise them as fundamental error because I thought the issues that I rose were much more substantial if we had won on the suppression issues then everything would have been moot and a new trial would have been granted.

Id. at 9. Borders's post-conviction counsel referenced other parts of the prosecutor's closing argument, and appellate counsel stated:

Yes, I'd considered them as issues, and then again, I didn't consider those to be in terms of winning issues, I didn't consider those to be of the same magnitude as issues regarding the suppression. An . . . and over the years the Appellate Courts have made it clear, that on appeal they desire you to be as succinct as possible and raise your best issues put your . . . best foot forward and raise the issues that you consider to be the strongest and uh, that if granted lead to a reversal and . . . it was in that strategy decision in my opinion that I raised the three (3) issues that I thought were most likely to win a reversal.

Id. at 9-10.

Borders's post-conviction counsel asked appellate counsel whether he felt the issues "that the prosecutor, say vouching for the witnesses, in pages eight oh three (803) to um eight oh seven (807)

and also . . . (inaudible) new evidence being a fifth (5th) amendment violation on page eight thirty four (834) and eight seventy-seven (877), you thought those were issues, just not the strongest issues?" *Id.* at 10. Appellate counsel stated: "Yes, yes." *Id.*

Borders's post-conviction counsel asked to amend the petition for postconviction relief to allege that trial counsel was ineffective on the same grounds that appellate counsel was ineffective. The court allowed Borders leave to amend the petition. On February 24, 2014, post-conviction counsel filed a notice informing the court that he would not be amending the petition for postconviction relief or requesting to present any further evidence.

On January 23, 2015, the court denied Borders's petition for post-conviction relief. Specifically, the court stated:

> In support of its ruling, the Court finds that [Borders] has failed to prove his request for relief by a preponderance of evidence in that there is no sufficient evidence presented the appellate counsel'[s] performance was deficient, no sufficient evidence that the performance fell below the objective standard of reasonableness, and that there is no sufficient evidence the performance contained errors so serious it resulted in a denial of [Borders's] 6th Amendment rights.

> Further, the Court finds there is no error in the appellate counsel's performance that the result of any such error(s) would have caused a different outcome. Also, the Court finds that the trial counsel did not object to prosecutorial statements which [Borders] claims constituted misconduct. There is not sufficient evidence the prosecutorial statements claimed by [Borders] constituted fundamental error. The prosecutorial statements did not make a fair trial for [Borders] impossible.

Appellant's Appendix at 93.

Dkt. 16-12.

On appeal from the denial of post-conviction relief, Mr. Borders argued: 1) that he was denied effective assistance of appellate counsel because appellate counsel failed to raise the issue of prosecutorial misconduct on direct appeal;

and 2) that he was deprived of a procedurally fair post-conviction hearing "under the Fourteenth Amendment" when his post-conviction counsel failed to challenge the effectiveness of his trial counsel with respect to trial counsel's alleged failure to object to prosecutorial misconduct. Dkt. 16-10.

On April 5, 2016, the Indiana Court of Appeals affirmed the trial court's denial of post-conviction relief. Dkt. 16-12. On transfer to the Indiana Supreme Court, Mr. Border presented one claim: that his due process rights under the Fourteenth Amendment were violated "when post-conviction counsel failed to follow through with an amendment he assured petitioner and the trial court he was going to do to assure that a record was made and present evidence that trial counsel was ineffective." Dkt. 16-13. The Indiana Supreme Court denied transfer on June 2, 2016. Dkt. 16-4.

Mr. Border filed a petition for writ of habeas corpus with this Court on March 31, 2017. Dkt. 2.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Mr. Borders's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

The Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and has emphasized that courts must not "lightly conclude that a State's

criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 19-20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

Under AEDPA, the Court reviews the last state court decision to address the merits of a prisoner's claim. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Where a claim has been adjudicated on the merits in state court, habeas relief is available under the deferential AEDPA standard only if the state court's determination was (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Thus, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo*, 590 F.3d 533, 536 (7th Cir. 2010). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "Under § 2254(d)(2), a decision involves an

unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy v. Basinger,* 604 F.3d 394, 399–400 (7th Cir. 2010) (citing *Ward v. Sternes,* 334 F.3d 696 (7th Cir. 2003)). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

### III. Discussion

Mr. Borders raises six issues in his petition for a writ of habeas corpus: 1) the trial court erred in overruling his motion to suppress evidence seized pursuant to the search warrant; 2) the trial court erred in admitting evidence after a traffic stop; 3) the sentence imposed was unreasonable; 4) appellate counsel was ineffective for failing to raise the issue of prosecutorial misconduct; 5) the State improperly commented about Mr. Borders's right to remain silent; and 6) that Mr. Borders was denied due process under the Fourteenth Amendment when post-conviction counsel failed to raise a claim of ineffective assistance of trial counsel that trial counsel failed to object to the alleged prosecutorial misconduct. The respondent argues that claims two through five were never presented to the Indiana Supreme Court and are procedurally defaulted. In reply, Mr. Borders abandons his claims regarding issues one through five.

**A. Procedural Default**:

"Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is

the duty to fairly present his federal claims to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To meet this requirement, a petitioner "must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* at 1025-26. In Indiana, that means presenting his arguments in a petition to transfer to the Indiana Supreme Court. *Hough v. Anderson*, 272 F.3d 878, 892 (7th Cir. 2001). A federal claim is not fairly presented unless the petitioner "put[s] forward operative facts and controlling legal principles." *Simpson v. Battaglia*, 458 F.3d 585, 594 (7th Cir. 2006) (citation and quotation marks omitted). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992). "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes*, 390 F.3d at 1026.

The respondent argues that claims two through five are procedurally defaulted because they were never presented to the Indiana Supreme Court either on direct appeal or in post-conviction proceedings. The Court will discuss claims two through five[1] below and claims one and six in sections B and C below.

### 1. Direct Appeal Issues: Traffic Stop Evidence and Unreasonable Sentence (Claims Two and Three)

---

[1] In his reply, Mr. Borders states that grounds one through five are dropped. Dkt. 25, p. 9. However, because the court finds that grounds two through five are procedurally defaulted, the court will briefly address these claims. Additionally, Mr. Borders is also not entitled to relief on ground one, so the court will also briefly address the merits of that claim.

In his habeas petition, with respect to the issues raised on direct appeal, Mr. Borders argues the trial court abused its discretion when it admitted evidence obtained following a traffic stop (claim two) and that the sentence imposed was unreasonable (claim three).

On direct appeal to the Indiana Supreme Court, the only issue Mr. Borders presented on transfer was whether the search warrant of his home was supported by probable cause. Mr. Borders didn't argue to the Indiana Supreme Court that the trial court erred in admitting the traffic stop evidence[2] or that the sentence imposed was unreasonable pursuant to Indiana Appellate Rule 7. Because Mr. Borders didn't fairly present these claims to each and every level in the state court system, he hasn't exhausted his state court remedies. At this juncture, this failure constitutes a procedural default of this ground.

A habeas petitioner can overcome a procedural default by showing cause for failing to properly exhaust a claim in state court and a resulting prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). A habeas petitioner can also overcome a procedural default by establishing that the court's refusal to consider

---

[2] Mr. Borders references the traffic stop in his transfer petition, but only to support the argument that the detection of marijuana during the traffic stop did not support the issuance of the search warrant to search his home. Dkt. 16-9, p. 11.

a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536, (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Mr. Borders states in his reply that he is dropping claims one through five, Dkt. 25, p. 9, so he didn't respond to the respondent's argument that Mr. Borders procedurally defaulted these claims.

Mr. Borders's argument that the sentence imposed was unreasonable is not a basis for federal habeas corpus relief because it is a state law claim. *Samuel v. Frank*, 585 F.3d 566, 574 (7th Cir. 2008).

### 2. Post-Conviction Issues: Ineffective Assistance of Appellate Counsel for Failing to Raise Prosecutorial Misconduct and the State's Improper Comments on the Petitioner's Right to Remain Silent (Claims Four and Five)

In his habeas petition, with respect to the issues raised on post-conviction, Mr. Borders argues that appellate counsel was ineffective for failing to raise the issue of prosecutorial misconduct (claim 4) and that the prosecutor improperly commented on his right to remain silent (claim 5).

On post-conviction review, the only issue Mr. Borders raised before the Indiana Supreme Court was whether he was denied due process under the Fourteenth Amendment when post-conviction counsel failed to raise a claim that trial counsel was ineffective for failing to object to alleged prosecutorial misconduct. Dkt. 29-1. In his post-conviction transfer petition, Mr. Borders didn't argue to the Indiana Supreme Court that appellate counsel was ineffective for failing to raise the issue of prosecutorial misconduct and that the prosecutor improperly commented on his right to remain silent. Because Mr. Borders didn't

fairly present this claim to each and every level in the state court system, he failed to exhaust his state court remedies. At this juncture, this failure constitutes a procedural default. In his reply, Mr. Borders says he wants these grounds dropped and doesn't argue how he can overcome procedural default. As such, these grounds are procedurally defaulted and he isn't entitled to habeas relief on these grounds.

### B. Ground One - Fourth Amendment Claim

In ground one, Mr. Borders alleges that the trial court abused its discretion in overruling his motion to suppress and allowing evidence unlawfully obtained be admitted into evidence. Dkt. 2, p. 3. On direct appeal, Mr. Borders argued to the Indiana Court of Appeals that "the warrant authorizing the search of his home was not supported by probable cause and that the evidence discovered as a result of the search was inadmissible." Dkt. 16-5, p. 15; dkt. 16-8, p. 4. Because Mr. Borders is challenging the probable cause for the search warrant, the court interprets it as a claim alleging his rights were violated pursuant to the Fourth Amendment. The respondent argues that Mr. Borders's Fourth Amendment claim isn't available for federal habeas review because he received a fair and full hearing and federal habeas review is precluded by *Stone v. Powell*, 428 U.S. 465, 494 (1976). Dkt. 16, pp. 15-17. In his reply, Mr. Borders drops this claim, but even if he hadn't, the court couldn't address the merits.

The Indiana Court of Appeals held that there was sufficient evidence to issue the warrant: an affidavit that included officers' observations in which they detected a strong marijuana odors and other odors consistent with

methamphetamine manufacturing was sufficient to support the warrant. Dkt. 16-8, p. 6. The affidavit also included evidence that officers detected marijuana odors coming from Mr. Borders during a traffic stop earlier that day, and another witness that stated she previously obtained methamphetamine from Mr. Borders. The court concluded this evidence was sufficient for the magistrate to conclude a search of Mr. Borders's home would reveal evidence of methamphetamine dealing and the search warrant was supported by sufficient probable cause. *Id.*

When "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.'" *Monroe v. Davis*, 712 F.3d 1106, 1116 (7th Cir. 2016) (quoting *Stone*, 428 U.S. at 494). A full and fair hearing for purposes of *Stone* is "not to second-guess the state court on the merits of the petitioner's claim, but rather to assure ourselves that the state court heard the claim, looked to the right body of case law, and rendered an intellectually honest decision." *Id.*

Mr. Borders received multiple full and fair hearings on his Fourth Amendment claim. Mr. Borders filed a pretrial motion to suppress with the trial court. The trial court held a hearing on his motion and issued an order suppressing any statement Mr. Borders made during his custodial interrogation at the initial vehicle stop but denied the remainder of the motion. Mr. Borders also raised his Fourth Amendment claim on direct appeal to the Indiana Court

of Appeals. That court reviewed Mr. Borders's claim, looked to Indiana law that cited clearly established Supreme Court precedent on Fourth Amendment claims, and rendered a thorough 9-page well-reasoned and intellectually honest decision.

*Stone v. Powell* therefore precludes habeas relief to Mr. Borders on his Fourth Amendment claim.

### C. Ground Six – Ineffective Assistance of Counsel Claims

Finally, in ground six, Mr. Borders argues that that a due process violation occurred when post-conviction counsel failed to raise the issue of ineffective assistance of trial counsel. By failing to raise the issue of ineffective assistance of trial counsel during post-conviction proceedings, Mr. Borders has has procedurally defaulted this claim at this juncture. The only way to overcome or excuse the procedural default of this claim is to show that post-conviction counsel was ineffective for failing to raise ineffective assistance of trial counsel during post-conviction.

#### 1. Procedural Background of this Claim

Mr. Borders filed a pro se petition for post-conviction relief, then filed filed an amended petition in which he alleged that he received ineffective assistance of appellate counsel and asserted that "[a]ppellate counsel failed to raise . . . the issue of improper argument by the prosecuting attorney." During the evidentiary hearing on the petition, Mr. Borders's post-conviction counsel asked to amend the petition for post-conviction relief to allege that trial counsel was ineffective on the same grounds that appellate counsel was ineffective. The court granted

leave to amend the petition, but post-conviction counsel later filed a notice informing the court that he would not be amending the petition for postconviction relief or requesting to present any further evidence.

The post-conviction court denied Mr. Borders's petition for post-conviction relief. On appeal to the Indiana Court of Appeals from the denial of his petition for post-conviction relief, Mr. Borders argued that his post-conviction counsel's failure to raise the issue of whether he was denied the effective assistance of trial court constituted a due process violation. The Indiana Court of Appeals denied his appeal. Dkt. 16-12. In its opinion, the Indiana Court of Appeals analyzed whether post-conviction counsel was ineffective not under the *Strickland* standard, but rather the standard for post-conviction counsel – which is whether post-conviction "'counsel appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court.'" Dkt. 16-12, p. 22. Based on this standard, the court determined that Mr. Borders's post-conviction counsel introduced and the post-conviction court admitted the trial record, the appellate briefs in the direct appeal, the rehearing petition, the transfer petition, and the opinion on direct appeal. Based on this, the post-conviction appellate court concluded that Mr. Borders was not deprived of a procedurally fair post-conviction proceeding. *Id.*, p. 23.

In his petition to transfer to the Indiana Supreme Court, Mr. Borders argued that he was denied due process under the Fourteenth Amendment when his post-conviction counsel procedurally defaulted his ineffective of trial counsel claims because he didn't amend the petition for post-conviction relief to include

the argument that trial court was ineffective for the same reason appellate counsel was. More specifically, that post-conviction counsel didn't amend the petition to raise the issue of improper argument by the prosecuting attorney when the prosecution vouched for the credibility of the investigator and the state's witnesses.

### 2. Overcoming Procedural Default of his Ineffective Assistance of Trial Counsel Claim

To overcome procedural default, Mr. Borders argues that his post-conviction counsel was ineffective for failing to amend his petition for post-conviction relief to raise claims of ineffective assistance of trial counsel.

A freestanding claim of ineffective assistance of post-conviction counsel is not a basis of relief. Because there is no constitutional right to an attorney in state post-conviction proceedings, the ineffectiveness of state post-conviction counsel isn't a ground for relief in a proceeding arising under section 2254. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Thus, to the extent Mr. Borders's argues post-conviction counsel was ineffective, this is not a free-standing basis for relief. But a claim of ineffective assistance of post-conviction counsel can be used to excuse the procedural default of a claim of ineffective assistance of trial counsel.

Our court of appeals recently held that the doctrine of *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013) "applies to Indiana procedures governing ineffective assistance of trial counsel claims." *Brown v.*

*Brown*, 847 F.3d 502, *reh'g en banc denied*, 869 F.3d 507 (7th Cir. 2017) (cert. denied). Stated another way, a petitioner may overcome procedural default of a claim of ineffective assistance of trial counsel by demonstrating ineffective assistance of post-conviction counsel for failing to raise a substantial claim of ineffective assistance of trial counsel. Mr. Borders argues that post-conviction counsel was ineffective for not raising the issue that trial counsel was ineffective for failing to object to statements made by the prosecutor's during closing argument. Dkt. 25, p. 12, citing Trial Transcript pages 803-807. [3]

Instead of wrestling with the complex question of whether Mr. Borders can overcome procedural default, judicial efficiency and prudence suggest that the court should address the allegedly defaulted claim on their merits, given the court's ultimate conclusion that those claims lack merit. *See Brown v. Watters*, 599 F.3d 602, 610 (7th Cir. 2010) (holding that because the procedurally defaulted claims lacked merit, the Court could bypass a "difficult" actual innocence claim and address the defaulted claims on the merits); *see also Miller v. Mullin*, 354 F.3d 1288, 1297 (10th Cir. 2004) (declining to address whether certain claims were procedurally defaulted because, "[i]n the interest of judicial economy, . . . the case may be more easily and succinctly affirmed on the merits"). Accordingly, the court will address Mr. Borders's procedurally defaulted claim and resolve it on the merits. *See Brown v. Watters*, 599 F.3d at 610.

---

[3] Mr. Borders argues in his reply that many of the facts relied on by the Indiana Court of Appeals in its post-conviction relief opinion are incorrect or are not true, but he doesn't articulate which specific facts he claims are incorrect. A determination made by the state court is presumed to be true unless Mr. Borders rebuts it by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

### 3. Merits of Ineffective of Trial Counsel Claim

Mr. Borders argues trial counsel's failure to object to improper statements during closing by the prosecutor amounted to a violation of his equal protection under the Fourteenth Amendment. The requirement of due process, applicable to the states through the Fourteenth Amendment, demands fair legal procedure, including that "the jury's verdict be based on evidence received in open court, not from outside sources." *Jordan v. Hepp*, 831, F.3d. 837, 846 (7th Cir. 2016) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966)).

Mr. Borders argues that the improperly prosecutor vouched for the credibility of the investigation and the state's witness. These are the part of the prosecutor's closing argument that Mr. Borders says was improper vouching that deprived him of a fair trial:

> You folks, as voters in this community, get to elect a prosecutor who uses his judgment to bring charges based upon the investigation of our citizen officers in this county. . . . Because you folks inevitably decide what justice is in this community by sitting and receiving the evidence, and using your common sense and life experiences to decide whether your law enforcement officers in this community have properly investigated and obtained enough evidence and that we have presented it in a fashion that convinces you of its truthfulness. . . . But the men and women who gathered that evidence were the folks who took the stand and provided you that information. The men who worked in the field as police officer, the folks who work in the Indiana State Policy Crime Law and who serve as chemists, those are the folks who this case is about in terms of whether they have gathered appropriate evidence that is persuasive to you. . . . You have citizen law enforcement officers in this community who are out there risking their lives to save the victims, save the community, and actually to help and save those who violate the laws.

Tr. 803-07.

The one thing we know is – about Susie McDaniel is this: We know that in the morning following her arrest, she gave a statement to Detective Siddons that was videotaped. And you heard testimony that a copy of that videotape was provided to the defense counsel. If she had given any information in that video statement that she contradicted in her testimony before you, you surely would have heard about it. There was no such evidence that she had given any prior inconsistent statement to the statement she testified before you. Secondly, if there was any independent evidence that anything that she had said in that video statement given to the defendant's counsel was wrong or incorrect, that evidence should have been presented to you. So, in other words, is – was there anyone who contradicted what she testified to? They have her statement, they knew what she said, yet no evidence was presented to contradict what she had told Detective Siddons either on the night following the arrest or in regard to the testimony she presented here. . . .

Tr. 833-35.

"The second thing the vigorous defense suggests is that Susie McDaniel was going to rush out to use meth as soon as she gave her statement. Did you hear her present any evidence of that? . . . Susie's been drug tested. She's been clean." Tr. 877. Dkt. 25, pp. 20-21.

Defense counsel did not object to these portions of the prosecutor's closing argument.[4] [5]

---

[4] After the court administered the jury instructions and the jury retired to the jury room, defense counsel requested a mistrial based on some of the statements the prosecutor made in closing. Tr. 915. Specifically, she stated that his mention that he is an elected prosecutor responsible for bringing the charges "inferred that because charges had been brought, they were appropriate and, therefore, the defendant was guilty." Tr. 915-16. She also stated that it was improper for the prosecutor to mention that law enforcement officers are risking their lives and that such "comment serves to inflame the jury and make them convict on an illegal and improper basis." Tr. 917-18. The court overruled the motion for mistrial. Tr. 918.

[5] Although post-conviction counsel withdrew his motion to amend the post-conviction petition to add a claim regarding ineffective assistance of trial counsel, the post-conviction trial court concluded that the prosecutor's statements did not make a fair trial for Mr. Borders impossible. Dkt. 16-10, p. 30.

A prosecutor's personal assertion of a government witness's credibility is impermissible. *Berger v. United States*, 295 U.S. 78 (1935). Improper vouching occurs when a prosecutor expresses his personal opinion about the truthfulness of a witness or when he implies that facts not before the jury lend a witness credibility. *See United States v. Renteria*, 106 F.3d 765, 767 (7th Cir. 1997). Similarly, invoking the oath as a prosecutor to imply he would not present perjured testimony to the jury is improper. *Id.*

In Indiana, a prosecutor can't state his personal opinion regarding the credibility of a witness during trial, because statements of that sort amount to vouching for a witness. *Thomas v. State*, 965 N.E.2d 70, 77 (Ind. Ct. App. 2012). However, "a prosecutor may comment as to witness credibility if the assertions are based on reasons arising from the evidence presented at trial." *Id.* It is the fact-finder's role to determine the truthfulness of witnesses. *Rose v. State*, 846 N.E.2d 363, 369 (Ind. Ct. App. 2006).

The prosecutor's statements about law enforcement don't urge a conviction based anything other than objective evidence or the jury's independent assessment of the witnesses' credibility. In fact, the prosecutor stated that the jury had to determine whether law enforcement or the chemists gathered appropriate evidence that is persuasive to the jury. Tr. 805-06. The prosecutor didn't comment that he believed any of the witnesses were telling the truth or were credible or that the law enforcement officers or the chemist should be believed simply because they were doing their job. The prosecutor didn't

assert his own credibility or that of the government to bolster the credibility of any witness.

The prosecutor said that it hadn't been shown that witness McDaniel was lying or that her testimony was any different than before. A prosecutor can argue that a witness has no reason to lie but can't express his personal opinion on the merits of the case, or the credibility of the witness. The prosecutor did not do that here. Rather, the prosecutor commented that there was no evidence that McDaniel provided prior inconsistent statements based on the evidence presented at trial, *Rose v. State*, 846 N.E.2d at 369, but didn't imply that the jury should believe McDaniel based on evidence that wasn't presented to it. *See Berger*, 295 U.S. at 88. The prosecutor simply stated there was no evidence McDaniel gave untruthful testimony. "Due process forbids a prosecutor to urge a jury to rely on evidence that is not in the record, whether that evidence is from newspaper accounts, the Internet, or the prosecutor's own mouth. It requires the jury to be left alone to do its own job, evaluating the evidence the trial judge admitted, and coming to its own independent conclusion (as opposed to one dictated by the prosecutor)." *Jordan v. Hepp*, 831 F.3d. at 847. The prosecutor came close to the line by discussing the impact of methamphetamine on the community, but didn't cross the line by, for example, urging the jury to send a message to the community meth dealers.

Because the prosecutor didn't make any improper remarks, there was no reason for defense counsel to object to these portions of his closing statement. Mr. Borders has failed to show that defense counsel gave deficient performance

by failing to object because the alleged statement weren't improper. He is not entitled to any relief on this basis.

## IV. Conclusion

This court has carefully reviewed the state record in light of Mr. Borders's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. Grounds one through five are procedurally defaulted. The court bypassed the difficult question of procedural default on claim six and determined that Mr. Borders isn't entitled to relief because there was no error in that the prosecutor didn't engage in any misconduct. Mr. Borders is not entitled to habeas relief, and his petition is therefore **denied.**

Judgment consistent with this Entry shall now issue.

## V. Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing § 2254* proceedings, and 28 U.S.C. § 2253(c), the court finds that Mr. Borders has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: <u>November 15, 2018</u>

_/s/ Robert L. Miller, Jr._

UNITED STATES DISTRICT JUDGE

SOUTHERN DISTRICT OF INDIANA

By designation

Distribution:

TOMMY BORDERS
930906
WABASH VALLEY – CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Henry A. Flores, Jr.
INDIANA ATTORNEY GENERAL
henry.flores@atg.in.gov